UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **SUPERIOR WOODWORK & TRIM L L C** | **CASE NO. 2:19-CV-01348** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PROFESSIONAL MACHINERY GROUP INC ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)" (Rec. 15) wherein Defendant, Professional Machinery Group, Inc. ("PMG") moves to be dismissed from this lawsuit.

## FACTUAL ALLEGATIONS

Plaintiff, Superior Woodwork & Trim, LLC ("Superior") consulted with Defendants, PMG and/or Professional Machinery Group South ("PMGS") regarding equipment it needed for its business operations.[1] Relying on Defendants' recommendations, Superior purchased a SCM Edgebander, Glue pot, Edge Automation ERC Return Conveyor, panel turner and panel kicker (the "System") in 2018.[2]

The System was delivered and installed at Superior's facility in DeRidder, Louisiana.[3] However, after installation, Superior experienced numerous defects in the System, including the System not functioning properly, parts breaking, compatibility issues

---

[1] Recs. 1 and 15, Petition and Amended Petition, ¶ ¶ 1-3.
[2] Id. ¶ 2.
[3] Id. ¶ 4.

and error messages.[4] After repeated demands and unsuccessful attempts to diagnose and repair the System, Superior filed the instant lawsuit to rescind and dissolve the sale and to be reimbursed for the purchase price.  Superior also seeks damages, attorney's fees and the costs of these proceedings.

## STANDARD OF LAW

The court may exercise jurisdiction over a non-resident only when the defendant has sufficient minimum contacts with Louisiana such that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). These contacts must be of a texture and quality such that the defendant would reasonably anticipate being haled into court in Louisiana. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174 (1985).

Due process requires the defendant to have "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Jurisdiction may be general or specific.

Where a defendant has "continuous and systematic general business contacts" with a forum state, the court may exercise general jurisdiction over any action brought against that defendant. *Luv N' Care, Ltd v. Insta-Mix, Inc., et al,* 438 F.3d 465 (5th Cir. 2006).

---

[4] Id. ¶ 5.

"Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities." *Walk Haydel,* 517 F.3d at 243. Louisiana Revised Statute 13:3201 requires a liberal interpretation in favor of finding jurisdiction. *Adcock v. Surety Research & Inv. Corp.,* 344 So.2d 969 (1977); *Latham v. Ryan*, 373 So.2d 242 (La.App. 3d Cir. 1979).

The party invoking the jurisdiction of a federal court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a non-resident defendant. *Guidry v. Tobacco Co. Inc.,* 188 F.3d 619 (5th Cir. 1999). The party seeking jurisdiction must present a *prima facie* case that the defendant is subject to personal jurisdiction. *Freudensprung v. Offshore Tech. Servs, Inc.,* 379 F.3d 327, 342-43 (5th Cir. 2004). To determine whether a *prima facie* case exists, "this Court must accept as true [the Plaintiff's] uncontroverted allegations and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id.*

A federal court may exercise personal jurisdiction over an out-of-state defendant only to the extent permitted by the long-arm statute of the state in which its sits and the Fourteenth Amendment's due process clause. *Paz v. Brush Engineered Materials, Inc.,* 445 F.3d 809, 812 (5th Cir. 2006). The Louisiana long-arm statute provides that Louisiana courts may exercise jurisdiction over non-residents. LA. STAT. ANN. § 13:3201. The Louisiana long-arm statute is coextensive with the limits of due process. *E.g., Laird v. Deep Marine Technology, Inc.,* 2004 WL 2984282, *1 (E.D. La. Dec. 7, 2004).

Due process requires (1) minimum contacts purposefully directed at the forum state, (2) a nexus between the contacts and the claims, and (3) that the exercise of jurisdiction will be fair and reasonable. *McFadin v. Gerber,* 587 F.3d 753, 759-60 (5th Cir. 2009); see also *ITL Int'l, Inc. v. Constenla, S.A.,* 669 F.3d 493, 498 (5th Cir. 2012).

It is the plaintiff's burden to satisfy the first two prongs, with the burden then shifting to the movant to show that an exercise of jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros, Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006). To determine whether the "fair play" prong is met, the courts look to five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interest, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759-60. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 615 (5th Cir. 2008).

Louisiana's long-arm statute, in pertinent part, provides as follows:

(A)  A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

1. Transacting any business in this state.
2. Contracting to supply services or things in this state.
3. Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
4. Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

Comment (d) provides:

"Transacting business", . . . is a term which is much broader than "doing business" as defined by earlier Louisiana cases, and the phrase "does * * * business" . . . conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase "engaged in a business activity" of R.S. 13:3471(1).

Louisiana Revised Statute 13:3201(A). Pursuant to Louisiana Revised Statute 13:3201(A)(2), an out-of-state defendant contracting with a forum state plaintiff creates sufficient minimum contact for specific jurisdiction when it "takes purposeful and affirmative action, the effect of which is to cause business activity foreseeable by (the defendant), in the forum state." *Mississippi Interstate Exp., Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir. 1982).

## **LAW AND ANALYSIS**

Superior brings this lawsuit to rescind and dissolve the sale of the System due to alleged irreparable defects. Superior named as Defendants PMG and PMGS. PMG asserts that (1) it is not associated with PMGS, (2) it did not sell the System to Superior, and (3) it has no contacts with the State of Louisiana. Consequently, PMG seeks to be dismissed from this lawsuit for lack of personal jurisdiction because Superior cannot meet its burden of establishing minimum contacts justifying the court's jurisdiction over it—a nonresident defendant.

"Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State." *Burger King*, 471 U.S. at 462. "All that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state." *Bell*

5

*Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 820 (8th Cir. 1994). Under the rule of the Fifth Circuit, when a resident plaintiff contracts with a nonresident defendant, the nonresident defendant is considered to have purposefully availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that the resident plaintiff would in fact perform a material part of its contractual obligations within the forum state. *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982). Under such circumstances, the defendant's "contact with the forum state cannot be deemed to be merely fortuitous." *Id.* at 1008. "By refusing to contract with the resident plaintiff," the defendant "'can act to alleviate the risk of burdensome litigation.'" *Id.* citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295-98, 100 S.Ct. 559, 566-67 (1980).

The Fifth Circuit has "consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Ainsworth v. Moffett Ing'g. Ltd.,* 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)).

PMG's state of incorporation is California and its principal place of business is in California. PMG maintains that it has no ties to the State of Louisiana and that it did not sell the System to Superior.[5]

---

[5] Defendant's exhibit B, Affidavit of Kirk D. Gass.

Superior maintains that the facts establish that PMG had minimum contacts with the State of Louisiana by directing its activities at the forum state; specifically, contracting to sell the System to a Louisiana company, and contracting to deliver and install the System in Louisiana. Superior submits the invoice it received for the System.[6] The hand-written invoice dated 8/22/18, which included freight costs and installation at the DeRidder facility,[7] contains a letter head entitled "Professional Machinery Group" (PMG) which reveals a Tracy, California address, phone number and fax number. The invoice reveals that PMG sold the System to Superior of DeRidder, Louisiana for $152,000. The invoice is signed by a representative of PMG; it further states "[t]hank you for ordering from Professional Machinery Group Inc."[8] The invoice also reveals the company's website as www.professionalmachinery.com.[9] The invoice was signed by David Hegger, Alex Quebedeaux, and Jeremy Cook.[10] Superior submits a payment disbursement from Wells Fargo[11] for $152,000 to PMG on August 23, 2018.

Superior submits PMG's company website located in Tracy, California which contains a statement that its "sales team has sold machines in every state in the United States . . ."[12] Superior submits the sworn affidavit of Alex Quebedeaux, a manager of Superior, who declares that he and his business partner, Jeremy Cook, attended the trade show on August 22, 2018, where PMG was one of the vendors.[13] Mr. Quebedeaux declared

---

[6] Plaintiff's exhibit 3, Rec. 30-3.
[7] Id. ¶ 11; Plaintiff's exhibit 3, Rec. 30-3.
[8] Id.
[9] Id.
[10] Id.
[11] Plaintiff's exhibit 4, Rec. 30-4, Superior financed the cost of the System through Wells Fargo.
[12] Plaintiff's exhibit 5, Rec. 30-5.
[13] Plaintiff's exhibit 6, ¶ ¶ 2 and 7, Rec. 30-6.

that at the trade show, Mr. Hegger, who represented himself as an owner of PMG in California, demonstrated the SCM Model KD FRT Edgebander and return conveyor system to him and Mr. Cook.[14] Superior attached the California Secretary of State Statement of Information[15] which shows that as of 2016 through 2019, Mr. Hegger is the Secretary of PMG.[16] Mr. Quebedeaux declares that Mr. Hegger is the owner of PMG and has partnered with Phil Koch in Texas to open PMGS; at the time of the trade show, PMGS had not opened its doors.[17]

After a decision was made to purchase the System, Mr. Quebedeaux and Mr. Cook informed Mr. Hegger that financing would be needed to purchase the System; Mr. Hegger advised that PMG worked with Wells Fargo and that he would take care of the paperwork and have it sent to Mr. Quebedeaux.[18]

Defendant, PMGS submits the Affidavit of Philip Koch, Managing Member of PMGS, who declares that PMGS is a limited liability company organized under the laws of Texas, with its principal place of business in Dallas, Texas.[19] Koch also declares that PMGS is a separate and distinct legal entity from PMG and is not affiliated with nor is it the parent or subsidiary of PMG. Attached to the Affidavit is PMGS' Invoice No. 2047 pertaining to the sale of the System to Superior Woodwork and Trim, L.L.C. and a wire transfer document showing payment to PMGS for the System.[20] Invoice No. 2047 is dated

---

[14] Id. ¶ 8.
[15] Plaintiff's exhibit 1, Rec. 30-1.
[16] Id; Plaintiff's exhibit 2, Rec. 30-2.
[17] Plaintiff's exhibit 6, Affidavit of Alex Quebedeaux, ¶ 10.
[18] Id. ¶ 12.
[19] Affidavit of Philip Koch, Rec. 46.
[20] Exhibits D and E attached to Affidavit of Koch, Rec. 46.

one day after the handwritten invoice signed by Cook, Quebedeaux and Hegger.[21] Koch further declares that PMG was not involved in the sale of the System to Superior. PMG submits the Affidavit of Kirk Gass who declares that PMG was not involved in the sale of the System to Superior. Gass, an owner of PMG and PMGS was not at the trade show, nor was he involved in the sale of the System to Superior.

Superior informs the Court that it never received Invoice No. 2047 dated 8/23/18 from PMGS; PMG relies on Invoice No. 2047 to show that PMGS, not PMG sold the System to Superior.[22] Superior also objects to Koch's affidavit suggesting that it is not based on Koch's knowledge of the books and records of PMGS. Superior also questions Koch's statement that PMG was not involved in the sale of the System since he is the Managing Member of PMGS, not PMG.

At the hearing, counsel for Plaintiffs submitted evidence of PMS's website which states that "[o]ver the years, our sales team has sold machines into every state in the United States as well as several other countries."[23] It further states: "Professional Machinery Group: The Premiere California Dealer, servicing the needs of the Professional Woodworker ....Nationwide!"[24] Counsel also submitted evidence of PMGS's website which states as follows: "We are an industrial woodworking machinery showroom, dealership, and service provider representing top wood technology machinery; headquartered out of California we're the latest branch to open providing sales, service and

---

[21] The Court further notes that the line item amounts for freight, and installation are different, but both indicate the total amount of $152,000.
[22] Plaintiff's exhibit 6, ¶ 14, Rec. 30-6.
[23] P5.
[24] Id.

support..."[25] Counsel also submitted an email from a representative of SCM,[26] the manufacturer of the System who was requesting additional documents "needed to get PMG funded."[27]

The evidence reveals that PMG and PMGS are so intertwined that we find that they are affiliated with each other. We further find that PMG has minimum contacts purposefully directed at the State of Louisiana. The facts reveal that PMG has purposely availed itself of the privilege of conducting activities in the State of Louisiana. PMG, through one of its owners, solicited sales to a Louisiana company at a trade show and represented that it was a California company. The initial invoice signed by the Plaintiffs and PMG's owner revealed that PMG, a California based company, was the seller. The Court finds that Plaintiffs have met their burden of establishing minimum contacts justifying the court's jurisdiction over a non-resident defendant.

## CONCLUSION

For the reasons set forth herein, the Motion to Dismiss for Lack of Personal Jurisdiction will be denied.

**THUS DONE AND SIGNED** in chambers on this 5th day of June, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[25] P9.
[26] "SCM" is SCM Group North America, Inc., the manufacturer of the System.
[27] P8.