UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **SUPERIOR WOODWORK & TRIM LLC** | : | **DOCKET NO. 2:19-CV-01348** |
| **VERSUS** | : | |
| **PROFESSIONAL MACHINERY GROUP INC ET AL** | : | **MAGISTRATE JUDGE KAY (BY CONSENT)** |

**MEMORANDUM ORDER**

Before the court is a Motion to Compel Responses to Discovery filed by plaintiff Superior Woodwork and Trim, LLC ("Superior"). Doc. 80. Superior seeks to compel discovery responses from SCM Group North America, Inc. ("SCM"). For the reasons stated below, Superior's motion is **DENIED**.

**I.
BACKGROUND**

This matter involves an allegedly defective edgebanding system (the "System") used by Superior in its woodworking business. Doc. 10, pp. 1-2. Superior alleges that SCM installed the System at Superior's DeRidder facility. Doc. 10, pp. 1-2. According to the allegations of the Amended Complaint and SCM's briefing, SCM supplied part of the system: the edgebander and glue pot. Doc. 10, ¶2; Doc 88, p.1. SCM explains that the rest of the system (return conveyor, panel turner, and panel kicker) was made by Edge Automation (no corporate relation to SCM). Doc. 88, p. 1. The edgebander itself was manufactured in Italy by SCM SpA. *Id.* SCM SpA is an affiliate of SCM and it is a non-party to this litigation. *Id.* Non-party SCM SpA also designed the edgebander software. *Id.* Co-defendants Professional Machinery Group, Inc. ("PMG") and

Professional Machinery Group South ("PMGS") are SCM dealers, and Superior alleges that PMG and/or PMGS sold the System to Superior in 2018. Doc. 10, p. 1.

Superior identifies three disputed items of discovery; the court will address each in turn.

## II.
### DISPUTED DISCOVERY REQUESTS

### A. *Requests for Production Nos. 13 & 14*

In Requests for Production 13 and 14, Superior seeks information concerning how long PMG & PMGS have been authorized dealers, how many Systems SCM sold to them, and any training SCM provided. Doc. 80, att. 3, p. 3. Superior argues that the requested documents directly relate to PMG's and PMGS's dealership status and experience, and whether or to what extent SCM trained PMG and PMGS. Doc. 80-2, p. 1. SCM responds that SCM does not maintain dealer-specific databases or maintain records exactly as Superior contemplates, and that SCM has produced all responsive documents. Doc. 88, pp. 3-4. Superior notes that SCM previously indicated that SCM had produced all the "easily gleaned" documents, leading Superior to question whether there are additional documents that were not "easily gleaned." Doc. 89, p. 1.

SCM attaches an affidavit of Robin Stansell, who attests that that information regarding sales to PGM & PGMS is wholly unavailable before 2010 and thereafter generally difficult to glean because SCM does not track sales by distributor or machine. Doc. 88, pp. 14-15. Stansell further attests that what responsive records SCM has produced came from manual review of hundreds of sales records. Doc. 88, pp. 14-15. The affidavit notes no real training to PMG entities, other than hands-on demonstrations at tradeshows. *Id.*

The court finds the content of the Stansell Affidavit credible. In light of SCM's attestation that there are no further responsive documents, Superior's motion will be **DENIED** as to **Requests for Production No. 13 & 14.**

### B. Request for Production No. 17

In Request for Production No. 17, Superior seeks service records of other Systems of the same model sold to plaintiff. Doc. 80, att. 3, p. 4. Superior argues that the documents may reveal SCM knew there were problems with the System and failed to disclose this information, making these documents potentially relevant. Doc. 80, att. 2, p. 3. SCM opposes, arguing that service records for other customers are irrelevant to this redhibition action because they will not show whether Superior's System works properly. Doc. 88, p. 2. SCM also argues that the request violates FED. R. CIV. P. 26(b) because the work involved to generate the records is not proportional to needs of case. Doc. 88, pp. 6-7. SCM notes that the request includes no time limit. Doc. 88, p. 6.

SCM attaches an affidavit of Robin Stansell, who attests that, "[i]t would take hundreds, if not thousands, of man-hours to" produce "service records pertaining to other Systems like the one sold to Superior" because its service database and ERP database are not integrated Doc. 88, pp. 16-17. As the court understands it, SCM would first have to search the ERP database for similar model machines and then manually pull each machine's records from the service database by serial number. Doc. 88, pp. 5-6. In alternative to its request to deny the discovery request outright, SCM argues that Superior should bear the costs of production, briefing the relevant factors in its opposition memorandum. Doc. 88.

The service records of other similar systems likely have some relevance to this matter, but the court must be mindful of the proportionality rule of FED. R. CIV. P. 26(b). *See e.g.*, *Putman v. BMW of N. Am., LLC*, No. CV-17-3485-JAK (KSX), 2018 WL 6137160, at *3 (C.D. Cal. May 14, 2018) (reasoning that service records for similar model vehicles could be relevant to plaintiff's

breach of warranty claim for a single vehicle, but that sweeping discovery requests for service records pertaining to thousands of vehicles were disproportionate to the needs of the case.). Rule 26(b)(1) of the limits the scope of discovery to matters relevant to a claim or defense and proportional to the needs of the case. Relevant information is defined as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 98 S. Ct. 2380, 2389 (1978); *see also* FED. R. EVID. 401 (defining relevant evidence as making a fact of consequence in determining the action more or less probable). In explicitly defining the scope of discovery in terms of both relevance and proportionality, Rule 26(b) is designed reinforce the obligation of the parties to consider the proportionality factors in making discovery requests. *See* FED. R. CIV. P. 26(b) advisory committee's note to 2015 amendment. The factors a court should consider when determining proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The court may limit discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C). *Hebert v. Lando*, 99 S. Ct. 1635, 1649 (1979). Control of discovery is limited to the trial court's sound discretion. *Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 283 (5th Cir. 2014).

Considering the proportionality factors: SCM urges that the cost of the System, "roughly $150,000.00" defines the amount in controversy, which SCM describes as non-trivial but also not proportional to the hundreds of work hours required to respond to the discovery requests. Doc. 88, p. 8. As to the importance of the disputed request to resolving the issues in the case, Superior argues that the documents may reveal SCM knew there were problems with the System and failed to disclose this information. Doc. 80, att. 2, p. 3. SCM counters that this request is not "terribly important to the overall case," because there is no indication in the pleadings, Initial Disclosures, or witness lists that Superior had direct communications with SCM that could have potentially been misleading. Doc. 88, p. 7-8. SCM concedes it is a larger company than Superior, but it urges that Superior is on "healthy financial footing" and able to bear production costs if necessary. *Id.* SCM argues generally that the burden of production greatly outweighs any likely benefit from the requested materials, (Doc. 88, p. 7) and SCM notes that Superior does not address any of the proportionality factors, instead arguing that production should be ordered "regardless of how feasible." Doc. 80, att. 2, p. 3.

The court agrees that Superior has not briefed—and does not appear to have considered—the obligation of the parties to consider the proportionality factors in making or revising its discovery requests. Therefore, it is **ORDERED** that the Motion to Compel (Doc. 80) is **DENIED** as to **Request for Production No. 17**, without prejudice to Superior's right to revise the request to limit its scope.

### C. *Interrogatories Nos. 6 & 7*

In Requests for Production Nos 6 and 7, Superior seeks details regarding the software installed on System. Doc. 80, att. 3, p. 5. The requests are as follows:

INTERROGATORY NO. 6:

Describe the software that was installed associated with the System, including but not limited to the year it was written, when it was first used on a product like the System at issue, how many updates have been made to the software, when they were made, why they were made and any complaints received regarding the software by other SCM end users.

INTERROGATORY NO. 7:

With regard to the System at issue, state specifically what software was installed and when updates to that software were installed on the System.

Doc. 80, att. 3, p. 5. Superior argues that the requested information may reveal that SCM knew there were issues with the software and failed or refused to disclose or fix the problems. Doc. 80, att. 2, pp. 3-4. SCM opposes, arguing that it has produced all responsive documents in its possession. Doc. 88. p. 5. SCM explains that it does not write software for the System and therefore has only a few already-produced responsive records, describing the software in generalized terms. Doc. 88, p. 4.

SCM explains via the attached affidavit of Robin Stansel that an Italian affiliate, SCM SpA, writes software for the System. Doc. 88, p. 16. The affidavit provides as follows:

> 9. I understand that Superior has asked for certain information about the specifications of the software used in the System, and when the updates were installed. It should be noted here that SCM North America does not write the software; rather this is done by our affiliate in Italy (SCM SpA). As such, we do not maintain detailed records concerning the software.
>
> 10. That said, here is what I understand about the software used on the System (this information is in addition to the information we previously provided). The name of the program is Maetro ProEdge. Maestro is an evolution of an earlier program called Winedge One Touch, which was in use from 2010 until 2019. Maestro was first installed on a machine on September 2017 and was used until September 2019. It was loaded on about 230 machines. Like most software products, there were periodic updates with Maestro. Fourteen (14) of these updates were to add new functionality.

Doc. 88, p. 16 (Affidavit of Robin Stansel).

Superior argues that SCM has provided some information about the software, including new information first provided with the opposition brief and/or affidavit, and that SCM should therefore be able to "obtain the other information from its own affiliate." Doc. 89, p. 2. SCM argues that under FRCP 34(a) Superior has not shown that the requested documents are in SCM's "control" such that production would be required. Doc. 88 (citing *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 3848110, at *3 (W.D. La. Aug. 5, 2014)). SCM argues that the proper procedure would be for Plaintiff to seek the information through discovery propounded directly to SCM SpA because Superior has not borne its burden of showing whether SCM has "control" of the documents within the meaning of FED. R. CIV. P. 34. Doc. 88, p. 4. In its Reply, Superior does not address the caselaw cited by SCM, but Superior does note that SCM never disclosed that another entity wrote the software until SCM filed its Opposition brief. Doc. 89, att. 2. The court notes that SCM disclosed in its October 15, 2020, response to Superior's Interrogatory No. 6 that, "SCM further responds that this interrogatory seeks information that is in the possession of non-parties and not SCM." Doc. 80, att. 4, p. 7.

The issue raised by SCM's opposition is whether SCM can be considered to have "control" of documents in the possession of SCM SpA for the purposes of FED. R. CIV. P. 34(a). That rule requires a party to produce "items in the responding party's possession, custody, or control" in response to formal requests for production. FED. R. CIV. P. 34. ""[E]ven if a party does not have actual possession of requested documents, he can be compelled to produce them if he has 'control' of them—that is, the right or ready ability to obtain possession." *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 3848110, at *3 (W.D. La. Aug. 5, 2014) (quoting *Ferber v. Sharp Electronics Corp.,* 1984 WL 912479, at *1 (S . D. N.Y. Nov. 28, 1984))(alteration original). Superior asks the court to assume that SCM must have access to the items in SCM SpA's

possession, essentially asking the court to assume that SCM has "control" of the documents for the purposes of FED. R. CIV. P. 34(a).  Doc. 89, p. 2.

Assessing whether a party has "control" of information sought in discovery involves a fact-specific inquiry in which the requesting party bears the burden of proof.  *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 3848110, at *4 (W.D. La. Aug. 5, 2014).  When the documents are in the possession of a non-party corporate affiliate, courts assess the following factors to determine whether the party has "control" of those documents that would warrant their production:

> (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation. Courts applying these factors have ordered the production of documents from a litigating parent corporation's subsidiary, from a litigating subsidiary corporation's parent, and from a litigating corporation's sister corporation

*Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 3848110, at *3 (W.D. La. Aug. 5, 2014) (citing *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09–cv–3778, 2011 WL 3418396, at *2 (S. D. Tex. Aug. 3, 2011).  Courts may also consider "(6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies." *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 136 (N.D. Ill. 2019).

Of the factors listed, the record bears evidence as to only one:  defendant SCM incorporated machinery and software produced by non-party SCM SpA into the System it marketed.  Doc. 88, pp. 1, 4.  Bearing in mind that Superior bears the burden on this question, *Dugas*, 2014 WL 3848110, at *3, the court finds this an insufficient basis to assume that SCM is in the "control" of documents held by non-party SCM SpA.

Superior's motion will therefore be **DENIED** with respect to **Interrogatories 6 & 7**, without any prejudice to Superior's rights to seek those documents through third-party discovery or to re-urge this motion should additional evidence bearing on the "control" factors come to light.

### III.
### CONCLUSION

For reasons stated, the Motion to Compel Responses to Discovery filed by plaintiff Superior Woodwork and Trim, LLC [doc. 80] is **DENIED**.

THUS DONE AND SIGNED in Chambers this 19th day of October, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE