UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **SUPERIOR WOODWORK AND TRIM, LLC** | : | **CIVIL ACTION NO. 19-cv-1348** |
| **VERSUS** | : | |
| **PROFESSIONAL MACHINERY GROUP, INC., ET AL.** | : | **MAGISTRATE JUDGE KAY** (By Consent) |

## MEMORANDUM RULING

Before us for consideration is a Motion for Summary Judgment filed by defendant SCM North America, Inc. ("SCM"), seeking dismissal of the claims made against it by plaintiff, Superior Woodwork and Trim, LLC ("Superior"). Doc. 90. Co-defendant, Professional Machinery Group South, LLC ("PMGS"), has joined in a portion of that motion. Doc. 92. Defendant Professional Machinery Group, Inc., ("PMG") has filed its own Motion for Summary Judgment that is considered separately. Doc. 93. The motion is opposed by Superior. Doc. 101. SCM has replied to the opposition [doc. 119] and the matter is now ripe for consideration.

After considering the evidence submitted and the arguments of the parties, finding the law and evidence to be in favor thereof, we **GRANT** the motion and, by separately issued judgment, dismiss the claims against SCM and PMGS with prejudice at plaintiff's cost.

## I.
### BACKGROUND

Superior's original petition filed in state court on September 3, 2019, names as defendants PMG and SCM and claims that, on some unspecified date in 2018, it purchased a "SCM Edgebander, glue pot, Edge Automation ERC Return Conveyor, panel turner and panel kicker"

("the System") from PMG. Doc. 1, att. 1, p. 3. Superior alleges that the System was manufactured by SCM and distributed by PMG. *Id.* It further alleges that the System was defective entitling Superior to rescission and dissolution of the sale with interest, damages, attorney fees, and costs of the proceeding. *Id.* at p. 4.

The matter was removed to this court on October 14, 2019. Doc. 1. Since removal Superior has twice amended its complaint. The first Amended Petition [doc. 10] adds PMGS and corrects the legal name of SCM. Aside from adding to its claim for damages to include "expenses in having to re-manufacture and/or repair the end products furnished to [sic] plaintiff to its customers" [*id.* p. 2, ¶ 8] and "damages for loss of business reputation and lost profits as a result of defendants' failure to properly install the System and/or diagnose and/or fix the System," [*id.* p. 3, ¶ 11], the allegations remained the same. The Second Amended Petition merely deletes the claim for loss of business reputation and lost profits. Doc. 66. Significantly for purposes of this motion, nowhere does plaintiff allege in any complaint that it was assigned any rights of warranty owed by a seller to a buyer under Louisiana law. The complaints have been answered by the defendants. *See* docs. 6, 14, and 67 (answers of SCM); docs. 53 and 68 (answers of PMG); and docs. 28 and 69 (answers of PMGS).

Through the motion before us, SCM seeks dismissal of the claims against it on the following grounds:

> (1) Superior cannot recover for rescission of the sale (cannot maintain an action in redhibition) as it did not purchase the System but rather acquired it through a financed lease entered into with Wells Fargo Equipment Finance, Inc. ("Wells Fargo"), there was no assignment of warranty rights from the lessor to SCM, and the SCM warranty does not permit assignment of warranty rights without SCM's prior written consent;
>
> (2) Even in the event there had been a valid assignment of warranty, SCM's warranty bars a claim for redhibition as it is legally entitled to do;

    (3) Plaintiff's delay and extended use of the System bars its rehibition claim; and

    (4) Plaintiff's claim for rescission of the sale is barred as a matter of law leaving to it only a claim for reduction of price, a claim it is unable to establish based upon evidence provided to SCM through discovery.

*See generally* doc. 90, att 1.  PMGS joins in SCM's first claim, that redhibition is unavailable to Superior insofar as it did not purchase the equipment but rather acquired it by lease.  *See generally* doc. 92.

    Superior opposes SCM's claims in the following particulars:

    (1) There exists a disputed, material issue of fact as to whether Superior purchased the System and whether it received an assignment from Wells Fargo.  As part of this latter argument Superior claims that the lease itself effects an assignment of warranty;

    (2) There exists a disputed, material issue of fact as to the limitation of SCM's warranty purporting to preclude recovery for redhibitory defects of the System;

    (3) There exists a disputed, material issue of fact as to whether Superior gave timely notice of the defects in the System and whether Superiors use of the System was reasonable.

*See generally* doc. 101.  SCM points out in reply that "Superior does not directly contest SCM's main legal point, i.e. that a lessee lacks standing" to bring a suit in redhibition.[1]  Doc. 119, p. 5.

---

[1] We have considered and dismissed the possibility that SCM's use of the term "standing" here is making a standing argument under Article III of the U.S. Constitution, which could theoretically raise issues about the application of federal procedural law under the law of *Erie R.R. Co. v. Tompkins*, 58 S. Ct. 817, 82 L.Ed. 1188 (1938) and its progeny.  *See, e.g.*, *In re Merrill Lynch & Co., Inc., Sec., Derivative & Erisa Litig.*, 597 F. Supp. 2d 427, 430–31 (S.D.N.Y. 2009) (noting that the amorphous concept of standing does not fit neatly in to the "substance/procedure dichotomy of *Erie*").  We determine that SCM is using the term standing in its more general sense, defined in *Black's Law Dictionary* (11th ed. 2019) as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right," as opposed to invoking to the narrower concept of Article III standing.  As to the latter, the U.S. Supreme Court has explained that the "gist of the question of standing," is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues [ . . . ]."  *Baker v. Carr*, 82 S. Ct. 691, 703 (1962).  Here there seems to be no legitimate question that Superior has alleged a personal stake in the outcome of the controversy.

Rather Superior "rel[ies] on a document that just came into existence on October 12, 2021, [by which Superior claims] it was assigned certain rights by Wells Fargo to give it standing." *Id.* SCM argues that Superior is precluded from arguing assignment of rights of warranty at this point as it failed to allege any such assignment in any of its pleadings. *Id.* at p. 8. It argues the purported "assignment" did not exist at the time suit was filed and that claims under warranties received by Superior in October of 2021 covering equipment received in 2018 are barred by the one year prescriptive period attributable to redhibition claims. *Id.* at pp. 11-12. And finally with respect to this issue SCM notes that the purported assignment of warranty by Wells Fargo to Superior is not properly authenticated to serve as competent summary judgment evidence. *Id.* at p. 13.

## II.
### APPLICABLE LAW

**A. Summary Judgment Standard**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*,

896 F.2d 116, 118 (5th Cir.1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S. Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir.2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008).

When, however, a movant satisfies its burden of showing there is no genuine dispute of material fact, the nonmovant must demonstrate there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Local Rule 56.1 requires a movant to file a statement of materials facts to which it contends there is no genuine issue to be tried. In response thereto an opponent of the motion must file a separate, short, and concise statement of the material fact as to which there exists a genuine issue to be tried. W.D. La. R. 56.32. Any material fact listed by the moving party will be admitted for purposes of the motion "unless controverted as required by this rule." *Id.* A non-movant may not meet its burden of proving there does exist a genuine issue for trial by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Little, supra,* at 1075.

Additionally, a claim not raised in the plaintiff's complaint but rather raised in response to a defendant's motion for summary judgment is not properly before the court. *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir. 1990). The Eleventh Circuit has held:

> In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) the Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. Indeed, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Efficiency and judicial economy require that the liberal pleading standards under *Swierkiewicz* and Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996).

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004), quoted as authority in *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 Fed. Appx. 521, 522 (5th Cir. 2012)

### B. Redhibition

"A seller warrants against the buyer against redhibtory defects, or vices, in the thing sold." LA. CIV. CODE art. 2520. A defect is redhibitory when

> it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The evidence of such a defect give a buyer the right to obtain rescission of the sale..

*Id.* "The codal articles on redhibition deal specifically with sales. These provisions set forth special rules relating to error in the cause of completed sales." *Stack v. Irwin*, 784; 167 So. 2d 363, 365 (La. 1964). When a party comes to possess an object through a lease contract entered into between the possessor of the object through a finances lease agreement, redhibition articles do not apply. *Alvis v. CIT Group/Equipment Financing, Inc.*, 918 So. 2d 1177, 1183-84.

### III.
### APPLICATION OF THE LAW TO THE FACTS

Relying on authority cited just above, *Alvis v. CIT Group*, we conclude that defendants are entitled to summary judgment dismissing plaintiff's claim in redhibition as there was no sale of

the System to plaintiff but rather it came into possession of the System by way of a financial lease agreement. The facts in *Alvis* that are relevant here are that plaintiff Randy Alvis negotiated the purchase of a skidder from Byles Welding & Tractor Co., Inc. ("Byles Welding"), through its owner, Clauriste T. Byles, Sr. ("Clauriste").  Having insufficient wherewithal or credit to obtain the skidder in his own right, Randy received the assistance of his father, E. G. Alvis, on whose good credit he could obtain financing.  Just as here with Superior, the arrangement to finance the purchase of the equipment "did not include an immediate transfer of ownership to either Randy or his father."  918 So. 2d at 1180.  Rather the equipment was leased to E. G., the father, by CIT Group/Equipment Financing, Inc. ("CIT"), through which financing was arranged.  Randy Alvis never took possession of the equipment because he "changed his mind" and neither did he make any payments.  *Id.*

Father and son filed suit approximately five months after the transaction discussed above against Clauriste, Byles Welding, and CIT seeking, among other things, to set aside the described transaction.  Before trial plaintiffs settled with CIT and proceeded to trial against Clauriste and Byles Welding.  The trial court found, among other things, that plaintiffs' claims for redhibition were unfounded as there had been no sale between plaintiffs and Byles.[3]  The appellate court affirmed noting that the action recognized by the Louisiana Civil Code at article 2520 "relates to error in the cause of completed sales, and, absent a sale, the redhibtion articles do not apply." *Id.* at 1183, citing as authority *Stack v. Irwin*, 167 So.2d 363 (La. 1964).  The appellate court goes on to note that the "transaction that gave the plaintiffs the right to possess the . . . skidder is the lease contract entered into between the plaintiffs and CIT." *Id.*  Plaintiffs had no "direct redhibition rights against the defendants . . . ." *Id.* at 1184.

---

[3] We are very much simplifying the claims between these parties and discussing only those that are applicable here.

Plaintiff attempts to distinguish its position from that of plaintiffs in *Alvis* by noting that "the Court specifically indicated the subject equipment was sold to the finance company" and "plaintiffs never took possession of the equipment, but the finance company did and then re-sold it to another company.[4]" Doc. 101, p.2. Plaintiff notes there is no document in this case showing a sale from PMGS[5] to Wells Fargo and Superior did actually take possession. *Id.* at p. 4.

We agree with the position taken by SCM in reply, i.e. that Superior fails to contest its main legal point, i.e. that redhibition is unavailable to it (Superior) as it leased the System and did not purchase it. The two facts relied upon by Superior as set forth in the preceding paragraph are true but have no bearing on the principle for which *Alvis* stands and on which SCM relies. It is true that SCM has produced no evidence of to what company PMGS sold the System but, by virtue of the existence of the lease agreement between Wells Fargo and Superior, we know it was not sold to Superior. *See* Lease at doc. 90, att. 3, p. 6. Obviously, if Superior owned, it would not need to lease. Who purchased the System from PMGS is of no moment – the single operative fact here is that it was not Superior. Accordingly, there exists no cause of action for Superior against defendants in redhibition.[6]

Superior's allegations in its complaint as amended assert only that it bought the System. Doc. 1, att. 1; docs. 10, 66. Nowhere in the complaint as amended is it alleged that Superior acquired rights of warranty through the lease agreement. Nevertheless and in opposition to the Motion for Summary Judgment, Superior suggests that language in the lease agreement effects an

---

[4]In *Alvis,* CIT did sell the equipment to another company, part of the complex situation in that case that did not exist here so that we omitted it from our recitation of the applicable facts.

[5]Plaintiff argues that the seller was either PMG or PMGS. By separate ruling issued today we find that PMG was not the seller of the System and, therefore, we refer only to PMGS as the seller here.

[6]Superior also argues the fact that all elements for a sale under Louisiana law existed, i.e. agreement as to the thing, price, and consent. LA. CIV. CODE art. 2439. Accordingly, there was a sale. See doc. 101, pp 3-4. Once again Superior's argument, that the appropriate elements of sale existed, is factually correct but of no moment. Insofar as it was required to lease the System in order to obtain it, it obviously did not go through with the contract of sale with PMGS.

assignment of warranty. Specifically Superior refers us to paragraph 4 of the lease where it states "Lessee shall only look to persons other than Lessor such as the manufacturer, vendor, or carrier thereof should any item of Equipment for any reason and in any way be defective." Doc. 90, att. 3, p. 7.[7]

Pretermitting a discussion of whether this issue is properly before the court since Superior failed to allege in its pleadings that its rights in redhibition were conferred through the lease agreement with Wells Fargo, we nonetheless find this argument uncompelling. The quoted language confers nothing on Superior – it only protected Wells Fargo from redhibition-type claims.[8] Superior also encourages us to consider jurisprudence that holds there are no "special forms or words required to constitute a valid assignment . . . ." Doc. 101, p. 4, quoting *Omega Hospital, LLC v United HealthCare Services, Inc.*, 2020 WL 7049857 at *17 (M.D. La. 12/1/2020). *Omega* and the cases cited therein also note, however, that assignments can be made orally but that oral assignment must be proved "like any other fact." *Id.* So while there may be no formal requirements for an assignment of rights to be had, there must be something upon which an assignment would be based and Superior has suggested nothing other than the writing quoted above.

Except . . .

Plaintiff also attaches to its opposition an unauthenticated document that purports to be an assignment from Wells Fargo to Superior. The document, dated October 12, 2021, (after the Motion for Summary Judgment was filed) states as follows:

---

[7] Plaintiff attaches page 2 of the lease agreement to its Memorandum in Opposition to the motion. Doc. 101, att. 5. Plaintiff fails to authenticate the document as it should to have it qualify as appropriate summary judgment evidence. Insofar as SCM also submitted the lease in support of its own motion and in duly authenticated form, we rely on that version when considering this argument.
[8] Interestingly, the heading for paragraph 4 of the lease agreement is "**NO WARRANTIES.**"

>       Wells Fargo hereby agrees to and does grant Superior Woodwork and Trim, LLC an assignment of its rights, title and interest, if any, relating to any defects in the System against any manufacturer(s) and/or vendor(s) of the System, including but not limited to such rights, title and interest under the manufacturer(s) and/or vendor(s) warranties or any warranties provided for by law. Therefore, Superior Woodwork and Trim, LLC hereby assumes the right of Wells Fargo to bring any claim, to the extent held by Wells Fargo, relating to any defects in the System against any manufacturer(s) and/or vendor(s) of the System, including but not limited to such rights, title and interest under manufacturer(s) and/or vendor(s) warranties or any warranties provided for by law.

Doc. 101, att. 14. A reading of that document would cause one to believe it was written precisely for this situation. And perhaps it was. But there are multiple reasons why we must conclude this document has no bearing on this litigation. Most importantly plaintiff did not allege in its original complaint or any subsequent amendment that it was suing defendants based on rights of warranty assigned to it by Wells Fargo; accordingly, this issue cannot be before us. *Fisher v. Metropolitan Life Ins. Co, supra*. Even if the assignment of warranty had been properly plead, which admittedly would have been very difficult since the assignment is dated two years after the original petition was filed, this offering could not be relied upon as it is unverified and is not competent summary judgment evidence. There is no affidavit submitted by anyone based on personal knowledge that the signatory to that document is who the document says he is or that the signatory had authority to take that action. And finally, of course, even if the assignment is one hundred percent valid, it was not made until after the Motion for Summary Judgment was filed. Rights that may have been bestowed upon Superior in October of 2021 can have no bearing on an action filed in September of 2019.

Given our conclusion articulated above, that a claim in redhibition is unavailable to Superior in that it was not the buyer of the System but rather acquired its rights through a lease agreement from Wells Fargo, which rights did not include warranties against the buyer against

redhibitory defects, or vices, in the thing sold, there is no reason to address the additional issues raised by SCM, namely that its own warranty bars a claim for redhibition, that Superior's delay and extended use of the System bars redhibition, and that Superior is unable to establish a right to a reduction in price of the System based upon the evidence it has produced through discovery.

## IV.
## CONCLUSION

For reasons set forth above, we find that the Motion for Summary Judgment filed by defendant SCM North America, Inc. ("SCM") [doc. 90], in which a portion co-defendant, Professional Machinery Group South, LLC ("PMGS"), has joined [doc. 92], seeking dismissal of the claims made against it by plaintiff, Superior Woodwork and Trim, LLC ("Superior") be and the same are hereby **GRANTED**. By separately issued judgment we dismiss all claims against these defendants with prejudice at plaintiff's cost.

THUS DONE AND SIGNED in Chambers this 15th day of November, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE